IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KAREN CARWYLE,

Plaintiff,

v.

ANNA HOSPITAL CORPORATION
d/b/a UNION COUNTY HOSPITAL,
and IVY ROACH, Individually,

Defendants.                                    Case No. 13-cv-371-DRH-DGW

MEMORANDUM and ORDER

**HERNDON, District Judge**

Now before the Court is defendants' Anna County Hospital d/b/a Union County Hospital and Ivy Roach (collectively "defendants") motion for summary judgment (Doc. 27), to which plaintiff filed a response (Doc. 37). For the reasons stated below, the Court **GRANTS in part and DENIES in part** defendant's motion for summary judgment.

I.   INTRODUCTION AND BACKGROUND

In October 1997, plaintiff began working at Union County Hospital (UCH). As of October 2009, she worked in UCH's Emergency Room as a registered nurse, in addition to "floating" to cover in various departments around the hospital and teaching courses (Doc. 3, ¶ 7). Plaintiff Carlyle allegedly worked under the

supervision of defendant Roach, who served as the Nurse Manager of the Medical/Surgical Department and the Education Coordinator for UCH.

Beginning in the fall of 2009, Carwyle alleges that Roach sent inappropriate messages and images via text message to proposition plaintiff to join in sexual activity with Roach, Roach's husband, and another UCH employee. (Doc. 3, ¶ 10; Doc. 28-2, p.17-18, 22 & 31). Thereafter, plaintiff requested that such texts cease.

During spring 2010, Roach and another UCH employee, Amy Hileman, had a "falling out". (Doc. 37-1,). Subsequently, plaintiff encountered a reduction in hours, work in other departments, and overtime availability (Doc. 37-1, p. 36-39, Doc. 37-15). Plaintiff also alleges that she was unwillingly relieved of her teaching duties at UCH (Doc. 28-2, pg. 37.). Subsequent to these incidents, plaintiff took FMLA leave following receipt of medical certification. Prior to granting approval for such leave, UCH allowed for a second medical certification. According to plaintiff, this was outside typical FMLA procedure at UCH (Doc. 37-17, p. 86-88).

Subject to the various alleged instances of reprisal, upon returning from leave in November 2011, plaintiff alleges she "constructively discharged" herself from UCH on November 3, 2011(Doc. 37). Thereafter, on or about March 2, 2012, Carwyle filed a charge of harassment and retaliation against UCH with the Illinois Department of Human Rights (IDHR) (Doc.37-32). The charge was simultaneously cross-filed with the local office of the EEOC. (*Id.*). Plaintiff filed her initial complaint in this Court on April 16, 2013 (Doc. 2), with an amended complaint to follow (Doc. 3).

Relevant to the instant dispute, defendants contend first that plaintiff did not properly obtain a right-to-sue letter from the EEOC (Doc. 27). In the alternative, defendants argue that plaintiff did not face "adverse employment actions" based on the facts pled, nor was UCH aware of the alleged sexual harassment at the time of these alleged retaliatory acts. Additionally, defendants argue that Carwyle's intentional infliction of emotional distress claim is time-barred or statutorily preempted.

The Court refers to defendants' motion and supporting memorandum (Docs. 27 & 28) and plaintiff's "statement of additional facts to consider" in her response to the motion (Doc. 37) for the remainder of the factual allegations.

## II.   LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 625 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, as well as resolve all factual disputes in favor of the non-moving

party. *Scott v. Harris*, 550 U.S. 372 (2007); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008).

The party seeking summary judgment bears the initial burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In response, the non-moving party may not rest on bare pleadings alone, but instead must highlight specific material facts to show the existence of a genuine issue to be resolved at trial. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995).

### III. ANALYSIS

#### a. Right-to-sue Notice

Defendants move for summary judgment arguing untimeliness as to certain claims raised in plaintiff's amended complaint. Defendants note that Carwyle had not yet received a right-to-sue notice from the EEOC at the time her amended complaint was filed, which is required before bringing a Title VII claim. See *Hill v. Potter,* 353 F.3d 1142, 1145 (7th Cir. 2003). Defendants argue that plaintiff's filing of her claims with the Illinois Department of Human Rights (IDRH), and cross-referencing with the EEOC, does not satisfy the EEOC notice requirement.

"There are several prerequisites for bringing a Title VII claim. A plaintiff must file a charge with the EEOC detailing the alleged discriminatory conduct within the time allowed by statute, and the EEOC must issue a right-to-sue letter." *Conner v. Illinois Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005)(citing *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir.1999); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992)). Thus, defendants argue that dismissal of Counts I and II is appropriate. Piggybacking off of that basis, defendants argue that because the remainder of plaintiff's claims arises solely under Illinois law, the Court should dismiss Counts III, IV, and V based on lack of supplemental jurisdiction (Doc. 28).

In this case, plaintiff's amended complaint does not allege receipt of the right-to-sue letter from the EEOC, only that a request was made. However, plaintiff responds to defendants' motion asserting that the delayed receipt of such a letter was due to EEOC error (Doc. 37). Specifically plaintiff states that the EEOC "mistakenly referred Carwyle's original EEOC complaint to the DOJ for investigation and disposition" (*Id*.). As such, the mistake was acknowledged and rectified when EEOC issued a right-to-sue notice back-dated to June 6, 2013 (Doc. 37-37). "While they may have been subject to dismissal at any time prior to [] receipt of a right-to-sue letter, the receipt of that letter after the complaint had been filed, but before it had been dismissed, effectively cured the deficiency in the original complaint." *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991)

Here, plaintiff effectively cured the deficiency in her amended complaint by attaching the letter from the EEOC to her response (Doc.37-37), which exhibits plaintiff's right to sue, and her compliance with the statutory requirement of Title VII of the Civil Rights Act of 1964. *Perkins*, 939 F.2d at 471. In light of the foregoing, the Court finds that plaintiff effectively cured the defect by producing the EEOC right-to-sue letter. Accordingly, the Title VII claims survive dismissal.

### b. <u>Sexual Harassment/Quid Pro Quo (Count I and Count III)</u>

Quid pro quo harassment occurs when sexual demands are made a condition of tangible employment benefits. *Dockter v. Rudolf Wolff Futures, Inc.,* 913 F.2d 456, 461 (7th Cir.1990). Defendants argue that plaintiff's evidence of sexual harassment is time barred and cannot be considered because of the statute of limitations for EEOC and IHRA complaints. Illinois allows a plaintiff 300 days from a discriminatory act to file a charge with the EEOC, if classified as a discrete discriminatory act. See *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006). Defendants argue that Carwyle's March 2, 2012 filing of her EEOC and IHRA harassment charges was untimely, thus barring the consideration of any discrete acts of discrimination that predated the 300-day statute of limitations.

In response, plaintiff argues that the "continuing violation" theory applies to allow Roach's earlier actions to come into play. Under the continuing violation theory, a plaintiff may obtain relief for a time-barred act by linking it with an act that falls within the limitations period. *See, e.g., Shanoff v. Ill. Dept. Human Services,* 258 F.3d 696, 703 (7th Cir.2001). The Seventh Circuit recognizes three

types of continuing violations: (1) where the employer's decision-making process takes place over time making it difficult to pinpoint the date of the violation; (2) where the employer has an express discriminatory policy; and (3) where discrete acts of discrimination are part of an ongoing pattern and at least one of said acts occurred within the relevant limitations period. See, e.g., *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002). Plaintiff argues harassment as part of a continuing violation exhibited by an ongoing pattern of retaliation, specifically with regard to the diminution in extra shifts and overtime hours (Doc. 37).

Plaintiff puts forth evidence of harassment dating back to the sexually explicit photos and texts beginning in 2009, and continuing in the form of decreased shifts and overtime hours until 2011. Carwyle's deposition testimony notes that she first noticed the reduction in hours and overtime beginning in 2010. During her deposition, she described the first incident where Roach denied her overtime and shifts in various departments because of Carwyle's refusal her sexual advances:

> A. When I would sign up for extra hours in med/surge and house charge, there would be a needs list and you would just sign your name to which hours you wanted to work, whether it would four hours, 12 hours, eight hours, whatever you wanted, and my name would be marked off the list.
> **Q. Okay. Did you talk to Ivy about that?**
> A. I did.
> **Q. And how did you know that she's the one who marked your name off the list?**
> A. Because I asked her why she wouldn't let me work in those departments, and she said because you wouldn't fuck me.
> **Q. And that's in 2010?**

> A. Yes
> **Q. With regard to the reduction in hours or working in overtime, when is the first instance you can recall, and maybe it's this 2010 incident you told me about, when is the first time you can recall thinking that you were being—your hours were being reduced or your overtime was being reduced in retaliation for something?**
> A. In late summer, fall of 2010.
> **Tell me about the instance when you first thought you were being retaliated against with regard to your hours or overtime?**
> A. I had oriented in the wound clinic. Ivy was off for personal reasons, and when she returned I asked if I could continue working in the wound clinic as I enjoyed doing it, and she told me no.
> **Q. Did she indicate why?**
> A. She said "you know why."
> **Q. And other than saying you know why, did she give any other reason?**
> A. Not until later on that fall whenever she said "because you wouldn't fuck me."

(Doc. 37-1, Carwyle Deposition, p 39-41).

The Seventh Circuit has stated that when alleging a claim under the continuing violation doctrine, "it is commonly the case that the plaintiff must instead demonstrate that [the continuing violation doctrine applies because] the harm about which [she] is complaining is part of a pattern of conduct, and [she] 'was reasonable not to perceive working conditions as intolerable until the acts of harassment had, through repetition or cumulation, reached the requisite level of severity.' " *Russell v. Board of Trustees of the Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir.2001) (quoting *DeClue v. Central Ill. Light Co.*, 223 F.3d 434, 435–36 (7th Cir.2000)).

However, limitations regarding the doctrine's applicability come into play, specifically when dealing with the issue of reasonableness in delayed filing of these claims. *Garrison v. Burke*, 165 F.3d 565, 569 (7th Cir.1999). In this case,

Carwyle went to hospital management in mid-2010 to report Roach to the ER manager, Murranda Morris. Morris "cautioned her to be cautious, as [Morris] believed she would be retaliated against further." (Doc. 37-15). Morris suggested Carwyle wait out the retaliation until things got better. According to her affidavit, the situation had not improved when Morris left UCH in 2011 (*Id*.).

Plaintiff's testimony and affidavits offer evidence of Roach's pattern of treatment of Carwyle. In addition, there is evidence in both affidavits that Roach singled out Carwyle from other UCH employees within the statutory allotted time period (Morris testified that the situation had not improved at the time she left her management position at UCH in 2011) following her rejection of Roach's sexual advances, Furthermore, Roach, herself, filed a harassment complaint form against Carwyle in August 2011alleging that after Carwyle reported Roach's conduct to Michael Murphy, her immediate supervisor, he went to Roach and told her that "Karen believes [Roach is] a lesbian and also a swinger" (Doc. 37-19).

Plaintiff was warned for allegedly "making derogatory remarks of a sexual nature" about Roach, which was included in her employment file. At this time, plaintiff included under the "Employee Remarks" section notes dating back to the texts and pictures from 2009, and the effects that followed, as the basis for her discussion with Murphy (Doc. 37-23). That discussion ultimately led to her written reprimand. Because the statute of limitations period had not lapsed based on the evidence the Court denies the motion for summary judgment.

### c. Sexual Harassment/Retaliation (Count II)

#### i. Adverse Employment Action

To establish a prima facie case of retaliation, a plaintiff must demonstrate: "(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Hilt–Dyson v. City Of Chicago*, 282 F.3d 456, 465 (7th Cir.2002). In order to make such a showing, a plaintiff may employ the direct or indirect method to establish retaliation.

The direct method requires a plaintiff to offer "direct evidence of animus—the so-called 'smoking gun'—or circumstantial evidence which establishes a discriminatory motive on the part of the employer through a longer chain of inferences." *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295 (7th Cir. 2010). Direct evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), where circumstantial evidence often proves to be less difficult to obtain. Circumstantial evidence may include: "(1) "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group," (2) "evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment," or (3) "evidence that the employee was

qualified for the job in question but passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."" *Swidnicki v. Brunswick Corp.*, 23 F.Supp.3d 921 (N.D. Ill. 2014) quoting *Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 675 (7th Cir.2012).

Regardless the method chosen, a plaintiff must proffer evidence of adverse employment action taken against her. In this case, defendants argue that no such action was taken. Plaintiff disagrees citing to the reduction in hours and pay. The Seventh Circuit has stated that "[i]n some cases, for example when an employee is fired, or suffers a reduction in benefits or pay, it is clear that an employee has been the victim of an adverse employment action." *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir.1987)). Additionally, overtime pay, may be significant and viewed as a critical part of an employee's gross earnings.

Carwyle alleges that a tangible aspect of her employment was affected because after refusing to partake in a sexual encounter with Roach, her extra shifts and overtime hours were reduced amounting to roughly a $10,000 reduction in her gross earnings (Doc. 37-31), when in fact "overtime and extra time hours were freely available for any nurses that wanted hours," according to former UCH ER nurse, Judy Rhine (Doc. 37-16). Moreover, "[Rhine]" was never crossed off or marked off of any extra time or overtime hour sheets [she] wanted or signed up for," (*Id.*) unlike Carwyle who alleges that her name was crossed off of shifts that she had previously covered during her tenure at UCH (Doc. 37-1). Murranda Morris further backed up those policies, noting that UCH was

understaffed and under-scheduled, which resulted in "continuous availability of overtime and extra time hours" for existing nursing staff in an effort to keep costs down and avoid paying outside nursing agencies (Doc. 37-15).

Furthermore, Carwyle alleges a causal link in the timeline of the retaliatory actions taken against her to constitute suspicious timing. Carwyle alleges that the retaliation did not take place until after the explicit text messages and her refusal to become involved with Roach occurred. The evidence of a chronological link, between the plaintiff's refusal to submit to unwelcomed sexual advances and the supervisor's subsequent adverse employment action reinforces plaintiff's claim to withstand summary judgment and create an issue of fact for the jury. The Court thus finds that there is a question of material fact precluding summary judgment as to whether adverse employment action was taken against Carwyle.

### ii. UCH's Awareness of Alleged Harassment/Retaliation

For an employer, such as UCH, to be liable under a harassment or retaliation claim, a plaintiff first must show that the employer knew or should have known of the existence of the harassment. *Zimmerman v. Cook Cnty. Sheriff's Dep't*, 96 F.3d 1017, 1018 (7th Cir. 1996). An employer may be put on notice, by the victim or another witness, with sufficient information to alert a reasonable employer to think that an employee was being harassed. *McDonnell v. Cisneros*, 84 F.3d 256, 260 (7th Cir. 1996).

In this case, UCH asserts a secondary basis for summary judgment on Count II by arguing that the hospital had no knowledge of the alleged harassment.

However, Carwyle made Murranda Morris, the UCH ER manager at the time, aware "that she was being retaliated against by Ivy Roach" in May of 2010 (Doc 37-15). Morrie suggested she wait for things to get better. She later went to Morris' replacement, Mike Murphy and reported the conduct as well. Carwyle also disclosed to Paula Morgan, the OR department manager that she was being retaliated against, when Morgan noticed that Carwyle was not picking up more shifts (D0c 37-1, p. 51-52). Moreover, Carwyle also testified that she told Tammy Samuels about the photos in May 2011. Carwyle stated that Tammy "was aware of them at that point in time. And she told [Carwyle that she was aware that Ivy was like that at that time." (Doc 37-1, p.32). This evidence is sufficient to create a genuine issue of material fact with regard to whether UCH knew of the alleged sexual harassment and retaliation.

Accordingly, the Court finds the record includes sufficient evidence from which a jury could reasonably infer that Carwyle was subjected to sexual harassment while employed at UCH, that her rejection of Roach affected the terms of her employment, and that UCH knew or should have known of the harassment. Therefore, summary judgment as to Count II is denied.

### d. After-Acquired Evidence

Defendants next argue that the after-acquired evidence defense is applicable in this case to limit potential damages based on Carwyle's alleged misconduct discovered after-the-fact. See *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361. The defense allows an employer, who discovers evidence of the

employee's wrongdoing that would have led to termination, to limit said employee's right to back pay to before the after-acquired evidence was discovered. *Id*.

In this case, UCH argues that Carwyle violated UCH's FMLA leave policy by contacting a nurse a Herrin County Hospital and inquiring about nursing positions (Doc. 28-2). Plaintiff, however, grounds her argument on the fact that UCH lacked consistency and uniformity in their application of internal policy. Therefore, plaintiff argues that policy on the books is not enough. She cites to various incidents in the record where UCH staff allegedly went against UCH policy. One frequently cited example is the instance where Carwyle reported harassment to her supervisor, Murphy, who then violated policy by going directly to Roach with Carwyle's complaints (Doc. 37-23).

With regard to the after-acquired evidence defense, the Seventh Circuit has previously quoted the Ninth Circuit who stated: "The inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects a recognition that employers often say they will discharge employees for certain misconduct while in practice they do not." *Sheehan v. Donlen Corp.,* 173 F.3d 1039, 1047-48 (7th Cir. 1999) quoting *O'Day v. McDonnell Douglas Helicopter Corp.,* 79 F.3d 756, 759 (9th Cir.1996).

With the instances of selective enforcement of company policy cited in plaintiff's response, and without further evidence that UCH's FMLA policy would have actually been enforced, Carwyle's inquiry in Herrin is insufficient to warrant

summary judgment on the after-acquired evidence defense. Thus, construing the alleged facts in favor of plaintiff, the Court finds that there are disputes of material fact, which the Court cannot, by operation of law, resolve at this stage. Therefore, the Court denies the motion for summary judgment as to the after-acquired evidence defense.

### e. Intentional Infliction of Emotional Distress (Count V)

To withstand summary judgment on an intentional infliction of emotional distress claim, a plaintiff must establish that: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended that their conduct would cause severe emotional distress, or there was at least a high probability that the conduct would inflict severe emotional distress; and (3) the conduct did in fact cause severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (applying Illinois law)); *Doe v. Calumet City*, 641 N.E.2d 498 (Ill. 1994). Furthermore, IIED requires more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46 cmt. D (1965)).

Under Illinois law, a defendant's conduct must be such that the "'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d at 507 (quoting Restatement (Second) of Torts § 46 cmt. D (1965)). In *McGrath*, the Supreme Court of Illinois cited non-exclusive factors which can

help inform this rather fluid standard. *See McGrath*, 533 N.E.2d at 809-10. One factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff. *Id.*

### i. Timeliness

As an initial matter, based on the Court's earlier determination that the factual bases for plaintiff's claims were deemed continuous in nature, the Court need not address the timeliness issue of the IIED claim. For torts involving a continuing or repeated injury, the statute of limitations does not begin to run until "until the date of the last injury or the date the tortuous acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177 (Ill. 2002). Because plaintiff alleged continuous conduct by Roach that began in 2009 and continued through the cessation of her employment at UCH, Carwyle's claim for IIED is timely.

### ii. Preemption

The Illinois Supreme Court has held that courts lack subject matter jurisdiction over tort claims for IIED that are "inextricably linked" to civil rights violations under the Illinois Human Rights Act. See, e.g., *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). However, if a plaintiff alleges facts sufficient to establish the elements of IIED without reference to IHRA duties, an independent basis for imposing liability exists, and the courts have jurisdiction over the IIED claim.

In this case, defendants seek summary judgment as to plaintiff's IIED claim, arguing that the claim is preempted under the "inextricably linked" standard. The Seventh Circuit offered guidance on the matter stating: "The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; "that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not 'furnish [ ] the legal duty that the defendant was alleged to have breached,' the IHRA does not preempt a state law claim seeking recovery for it." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006) (citing *Maksimovic*, 687 N.E.2d at 23). Hence, if plaintiff's claims "rest [ ] not just on behavior that is sexually harassing, but rather behavior that would be a tort [regardless of defendant's] motives," they are not preempted. *Id*. at 605.

Prior to the IHRA, Illinois law enforced no duty to protect employees against sexual harassment. See *Finnane v. Pentel of America, Ltd.,* 43 F.Supp.2d 891, 903 (N.D.Ill.1999), citing *Maksimovic*, supra. It was not until the IHRA that this duty existed. At present, an employer must take action under state law to prevent employees and others from engaging in harassing conduct. The IHRA's protections extend to claims of sexual harassment that "has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment. 775 ILL. COMP. STAT. ANN. 5/2-101.

Here, Carwyle cites to *Geise* and *Maksimovic* in her response. Although the court in *Maksimovic* held that the IHRA does not preclude jurisdiction over all torts associated with sexual harassment, the court allowed the plaintiff to proceed only on common law tort claims for assault, battery and false imprisonment. *Maksimovic*, 687 N.E.2d 21. The sexual harassment alleged in that case was deemed "merely incidental to what are otherwise ordinary common tort law claims." *Id*. The same cannot be said for Carwyle.

Here, as conferred above, Carwyle's allegations to support her IIED claim are acts of sexual harassment and retaliation. Specifically looking to the amended complaint, Count V realleges the allegations that form the basis for Carwyle's Title VII and IHRA claims. Additionally, plaintiff explicitly alleges that "Roach's persistent and pervasive sexual advances and retaliatory attacks after being rebuffed was extreme and outrageous" and caused Carwyle severe emotional distress (Doc 3, ¶62). To determine whether a state law tort claim is preempted by the IHRA depends on whether the IHRA established the legal duty allegedly breached. Bannon v. University of Chicago, 503 F.3d 623, 630 (7th Cir.2007). Plaintiff's claim for emotional distress is clearly intricately linked to her sexual harassment claims, a claim established under the IHRA. As a result, the claim for IIED is preempted. Therefore, Count V is dismissed for lack of jurisdiction.

### IV.   CONCLUSION

Accordingly, the Court **GRANTS in part** defendants' motion (Doc. 27) as to Count V—the IIED claim. The IHRA preempts plaintiff's IIED claim because it is

"inextricably linked" to her sexual harassment claims. Therefore, this Court **DISMISSES** Count V for lack of jurisdiction. As to the remainder of defendants' Anna County Hospital d/b/a Union County Hospital and Ivy Roach motion for summary judgment (Doc. 27) this Court **DENIES** defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Digitally signed by David R. Herndon
Date: 2015.04.11 16:01:18 -05'00'

**United States District Judge**